# EXHIBIT A

**ROME LLP**
Eugene Rome (SBN 232780)
Email: erome@romellp.com
Brianna Dahlberg (SBN 280711)
bdahlberg@romeandassociates.com
2029 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 282-0690
Facsimile: (310) 282-0691

Attorneys for Plaintiff EM1 CAPITAL LLC

Electronically FILED by
Superior Court of California,
County of Los Angeles
10/24/2023 8:39 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Ayala, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| EM1 CAPITAL LLC, a Wyoming limited liability company, | Case No. 23STCV26020 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **(1) FRAUD**<br>**(2) CONVERSION**<br>**(3) VIOLATION OF PENAL CODE § 496** |
| DWHTD TECHNOLOGY PTE LTD, a Singapore Exempt Private Limited Company; ALLIANCE MANAGEMENT SERVICES, LLC, a Utah limited liability company; TRAVIS BOTT, an individual; RICHARD JASON BOTT, an individual; and DOES 1 through 100, | **(4) BREACH OF CONTRACT**<br><br>**[DEMAND FOR A JURY TRIAL]** |
| Defendants. | |

COMPLAINT

Plaintiff EM1 CAPITAL LLC ("EM1" or "Plaintiff"), by and through its undersigned attorneys, hereby complains against Defendants DWHTD TECHNOLOGY PTE LTD ("DWHTD"), ALLIANCE MANAGEMENT SERVICES, LLC ("AMS"), TRAVIS BOTT ("T. Bott"), RICHARD JASON BOTT ("R. Bott"), and DOES 1 through 10 (collectively, "Defendants"), as follows:

## NATURE OF THE ACTION

1.       This action is based on Defendants' wrongful inducement of Plaintiff's investment in DWHTD with the promise of high returns on the investment in the form of monthly payments. However, DWHTD is nothing more than a scam, and Defendants' scheme to induce Plaintiff to invest in the scam has harmed Plaintiff in the amount of $1 million.

## THE PARTIES

2.       Plaintiff EM1 Capital LLC is a Wyoming limited liability company with a principal place of business at 30 N. Gould Street, Suite R, Sheridan, Wyoming 82801. Its single member, Jas Mathur, is a resident of Los Angeles, State of California.

3.       Defendant DWHTD Technology PTE LTD is a Singapore Exempt Private Limited Company located at 77 High Street, #09-11, High Street Plaza, Singapore 179433.

4.       Defendant Alliance Management Services LLP is a Utah Limited Liability Company located at 265 North Main Street, Kaysville, Utah 84037-1471 whose principals are listed on the Utah state business search as Travis Bott and Richard Jason Bott.

5.       On information and belief, Defendant Travis Bott is an individual who resides in Los Angeles County, California.

6.       On information and belief, Defendant Richard Jason Bott is an individual who resides in Davis County, Utah, but, along with Travis Bott, has directed his activities at Plaintiff, whose representative resides in the State of California, Los Angeles County.

7.       At all times relevant hereto, Defendants DWHTD, AMS, T. Bott and R. Bott were alter egos of each other and there existed a unity of interest and ownership between DWHTD and AMS such that the separateness of the two companies never existed. Indeed, when EM1 invested

2

in DWHTD, EM1 wired the investment monies directly to AMS, despite the fact that AMS has no visible connection to DWHTD, with a note indicating that monies would be invested by AMS into DWHTD. All of the acts and omissions described in this Complaint by any defendant were duly performed by, and attributable to, all defendants, each acting as agent, employee, alter ego and/or under the direction and control of the others, and such acts and omissions were within the scope of such agency, employment, alter ego, direction, and/or control. Denying the unity of interest between DWHTD and AMS and adhering to the fiction of the separate existence between them would result in fraud and inequity to EM1. Any reference in this complaint to any acts of defendants shall be deemed to be the acts of each defendant acting individually, jointly, or severally.

8.    The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of DOES 1 through 100, inclusive, is unknown to Plaintiff who therefore sue said defendants by such fictitious names. The full extent of the facts linking such fictitiously sued defendants is unknown to Plaintiff. Plaintiff is informed and believes and based thereupon alleges that each of the defendants designated herein as a DOE was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to Plaintiff. Plaintiff will hereafter seek leave of the Court to amend this Complaint to show the DOE defendants' true names and capacities after the same have been ascertained.

9.    Plaintiff is informed and believes and based thereon alleges that Defendants, including DOES 1 through 100, inclusive, were agents, servants, employees, successors in interest, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment and/or venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer. Plaintiff is informed and believes and based thereon alleges that each of the defendants designated herein as DOE aided and abetted, conspired with, and/or took part in and participated with each other

3

COMPLAINT

Defendant in all matters referred to herein, and was in some manner responsible for the injuries and losses suffered by Plaintiff.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the action under Article 6, Section 10 of the California Constitution. and Section 410.10 of the California Code of Civil Procedure. This Court has personal jurisdiction over the parties because each of the Defendants deliberately directed their fraudulent and tortious conduct towards Plaintiff, in Los Angeles, California.  Further, the contract at issue, the IMA (as described below) was signed and entered into in Los Angeles, California. Plaintiff's sole member, Jas Mathur, is a resident of the State of California, County of Los Angeles. This Court has jurisdiction over the subject matter of this lawsuit because the amount in controversy, exclusive of interest and costs, exceeds the $25,000 minimum jurisdictional limit of the Court.

11.    Venue is proper within this judicial district under Section 395 of the California Code of Civil Procedure because a substantial part of the acts, conduct, events or omissions that are subject of this action took place within Los Angeles County and the IMA was entered into in Los Angeles County, State of California.

## GENERAL ALLEGATIONS

12.    Since around mid-December 2022, T. Bott had been promoting a Singapore-based investment fund to mutual friends of Jas Mathur ("Mathur"), president of EM1. T. Bott explained that the funds would be trading in Traders-Domain platform, which is controlled/managed by Fredirick "Ted" Safranko, a close friend and business partner of T. Bott for the past several years.

13.    Subsequently, following an introduction by a mutual friend, on January 5, 2023, T. Bott presented Mathur with an opportunity to invest $1 million in a "proprietary trading venture" whose returns, as established by historical performance, would generate an 18% monthly return on the investment over the course of one (1) year.  T. Bott elaborated to Mathur that he owned a company called SAVVY Wallet which was licensed by Evolve Bank & Trust, N.A. According to T. Bott, all members and users of SAVVY Wallet would receive a debit card which would facilitate withdrawal of funds.

14. To that end, T. Bott presented Mathur with a document entitled Investment Management Agreement, which Mathur signed on behalf of his company, Plaintiff EM1, on January 7, 2023 (the "IMA"). The IMA is attached hereto as *Exhibit A.*

15. In significant part, the IMA asserts that "This Agreement concerns the trading of gold against the dollar." (IMA § 1).

16. Pursuant to other terms of the IMA, EM1 agreed to invest $1 million in DWHTD, and DWHTD agreed to pay a minimum of 18% every month on the total account balance of $1 million for thirteen (13) months. DWHTD further agreed that at the end of the thirteen (13) month period, DWHTD would return 100% of EM1's principal investment ($1 million). (IMA § 1.1).

17. The IMA further provides for termination upon non-performance of the agreement. Specifically, non-performance is defined as monthly returns less than 18%. Thus, in the event that DWHTD failed to make a monthly payment of 18% to EM1, EM1 had the right to terminate that agreement immediately and receive 100% of the principal funds back within thirty (30) days of termination. (IMA § 1.4).

18. The IMA was signed by Simon Guan Hang Lim, DWHTD's purported director on January 5, 2023, and EM1's president, Mathur, on January 7, 2023.

19. After execution of the IMA, per T. Bott's instructions, EM1 wired the principal investment of $1 million to AMS, a Utah company owned by T. Bott and R. Bott.

20. Per T. Bott, the 18% monthly interest payments from the $1 million investment would be disbursed monthly into Mathur's SAVVY Wallet.

21. On February 3, 2023, Mathur contacted T. Bott, requesting that he be paid the return he was promised. T. Bott replied that the funds only get disbursed after a full thirty (30) days, so a payment would be forthcoming in the middle of February 2023.

22. On February 16, 2023, T. Bott called Mathur and stated that the operators of the fund had an issue, this time attempting to distinguish his role at the fund as a mere investor, rather than an owner. Despite his new claim that he was just an investor, T. Bott proceeded to advise Mathur that the account had taken around a 50% loss, and Mathur could either get back $650,000 today (the

5

COMPLAINT

amount showing in the MetaTrader account, which would be $350,000 less than what Mathur had invested) or wait until the end of March and receive the past-due 18% returns from January, February and March. T. Bott elaborated that other mutual friends who invested through him all opted to wait until the end of March. As Mathur later found out from these mutual friends, T. Bott advised them that it was Mathur who opted to wait until March, and that they should follow his lead.

23.     On March 14, 2023, Mathur met with T. Bott in Los Angeles, California to discuss his investment. Prior to the meeting, Mathur performed an internet search of the Trading Platform, only to discover that Ted Safranko was charged by the CFTC in a $144,043,883 fraud. *See* https://www.cftc.gov/PressRoom/PressReleases/8665-23.

24.     Mathur shared what he had found with T. Bott, and T. Bott grew irate and began insulting Mathur. The conversation deteriorated when T. Bott threatened Mathur in front of two (2) mutual friends, stating that he had a gun on him and would use it on Mathur.

25.     As those present endeavored to de-escalate the situation, Mathur queried T. Bott as why, as such a purported big shot, he could not just wire Mathur the $1 million back immediately without any profits. T. Bott responded that he would do it the following day but changed his mind minutes later, and instructed Mathur to wait until the end of this month, and if there was no progress, T. Bott said he would "vouch for it."

26.     Subsequently, T. Bott advised Mathur that, due to involvement of mutual friends between the two, T. Bott would provide a loan against the funds in the Meta Trader account until a supposed "withdrawal issue" could be navigated.

27.     Since that time, no loan or other payments have been made to Mathur or his company, EM1.

28.     Rather, following involvement of counsel and a preliminary investigation, it has become evident that the entire investment opportunity is and always was a sham.

29.     As a principal matter, as reflected in its business profile, DWHTD was incorporated on December 28, 2022, which is *after* T. Bott floated the investment opportunity to Mathur's acquaintances in mid-December 2023 with representations that the company *historically* could

6

return the promised 18% monthly returns on investment. A true and correct copy of the Business Profile obtained from the Singapore Secretary of State is attached as *Exhibit B*. DWHTD has no actual physical presence in Singapore and its address is a corporate agent, offering incorporation services and a "virtual" address.

30.     Second, while the IMA states that "[t]his Agreement concerns the trading of gold against the dollar," the Secretary of State filing reflects the nature of the company's business endeavors to be "DEVELOPMENT OF SOFTWARE AND APPLICATIONS (EXCEPT GAMES AND CYBERSECURITY) (62011)." *See id.*

31.     Next, for a reason that remains unanswered, T. Bott directed Mathur to wire the funds to a Utah company T. Bott owns with his brother, R. Bott. This company is not listed in the IMA and has no visible connection to anything subject to the IMA.

32.     In sum, this transaction is, on its face, a scam perpetrated in a blunt fashion, through plain fraud. There are no returns, there is no live viable company, and there is no trading. Rather, T. Bott and his brother, R. Bott, simply defrauded EM1 out of $1 million. This action seeks to right this wrong.

## FIRST CAUSE OF ACTION

### Fraud

### (By Plaintiff Against All Defendants)

33.     Plaintiff incorporates by reference all foregoing factual allegations as if fully set forth herein.

34.     On January 7, 2023, Defendant Travis Bott made the following representations to Plaintiff:

    a.     That the purported trading opportunity was full-proof and has a historical record of paying at least 18% per month in profits.

    b.     That the principal would never be touched and would always be secure.

    c.     That he was the owner of the technological platform that would always ensure payments, and trading would be accomplished in a timely and secure manner.

7

COMPLAINT

    d.  That other friends and colleagues had successfully traded in this fashion and were realizing the profits promised.

    e.  That if Mathur agreed to invest $1 million in this trading structure, then he would be paid a minimum of 18% every month on the total account balance of $1 million for thirteen (13) months. And, at the end of the thirteen (13) month period, his entire $1 million investment would be repaid.

    f.  That he owned a company called SAVVY Wallet which was licensed by Evolve Bank & Trust, N.A., and all members and users of SAVVY Wallet would receive a debit card which would facilitate withdrawal of funds.

    g.  And, finally, that in the event the trading strategy failed to make a monthly payment of 18%, then Mathur could simply terminate the program and receive 100% of the principal funds back within thirty (30) days of termination.

35.    Each of these statements was deliberately false and Travis Bott knew that the representations about the agreement were false.

36.    Travis Bott intended that Plaintiff's representative, Mathur, rely upon its statements and Mathur did, in fact, reasonably and justifiably rely upon its statements.

37.    Travis Bott's actions were performed in concert with and were duly performed by, and attributable to, all Defendants, each acting as agent, employee, alter ego and/or under the direction and control of the others.

38.    As a result of Travis Bott's knowingly false statements and Plaintiff's reliance thereupon, Plaintiff invested $1,000,000.00.

39.    Plaintiff has been damaged in the amount of no less than $1,000,000.00.

40.    Travis Bott and the rest of the defendants who aided and abetted these fraudulent actions, engaged in these wrongful acts as described herein. These acts were intentional, malicious, oppressive and fraudulent, and were committed with reckless disregard of harm to Plaintiff, in willful and conscious disregard of Plaintiff's rights, such that Plaintiff is entitled to recover punitive and exemplary damages against Defendants in an amount that is sufficient and appropriate to punish

8

Defendants, as well as to deter them from committing similar acts in the future.

## SECOND CAUSE OF ACTION

### Conversion

### (By Plaintiff Against All Defendants)

41.    Plaintiff incorporates by reference all foregoing factual allegations as if fully set forth herein.

42.    Plaintiff transferred a total of $1,000,000.00 to DWIITD and AMS, which is wholly owned by and an alter ego of Travis Bott and Richard Jason Bott.

43.    Defendants have converted this sum in full by applying it to their own purposes while giving no value to Plaintiff.

44.    Plaintiff has demanded his funds be returned but to no avail.

45.    Plaintiff has been damaged in the amount of no less than $1,000,000.00.

46.    Defendants' wrongful acts as described herein were intentional, malicious, oppressive and fraudulent, and were committed with reckless disregard of harm to Plaintiff, in willful and conscious disregard of Plaintiff's rights, such that Plaintiff is entitled to recover punitive and exemplary damages against Defendants in an amount that is sufficient and appropriate to punish Defendants, as well as to deter them from committing similar acts in the future.

## THIRD CAUSE OF ACTION

### Violation of Penal Code § 496

### (By Plaintiff against all Defendants)

47.    Plaintiff incorporates by reference all foregoing factual allegations as if fully set forth herein.

48.    California Penal Code § 496(a) provides that "every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year,

9

COMPLAINT

or imprisonment pursuant to subdivision (h) of Section 1170." Sub-section (c) of Penal Code § 496 instructs that "any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

49. As alleged above, Defendants have converted $1,000,000.00 which they obtained through theft and have refused to return same. By this refusal, Defendants are unlawfully withholding those funds. Defendants received, concealed, and/or withheld the funds knowing that the funds were stolen property.

50. Accordingly, as a result of the foregoing, Plaintiff has been damaged and is entitled to recover three times the amount of his actual damages in addition to reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (By Plaintiff Against Defendant DWHTD)

51. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

52. Plaintiff performed the terms of the IMA in the manner specified by the IMA.

53. Defendant DWHTD has failed and refused, and continues to refuse, to tender its performance as required by the IMA. This includes making monthly payments of 18% on the principal investment of $1,000,000.00 and/or returning the principal investment of $1,000,000.00 to EM1.

54. DWHTD breached the IMA by failing to pay 18% on the principal investment of $1,000,000.00 to EM1 causing permanent and irreparable harm to EM1.

55. DWHTD breached the IMA by failing to return EM1's principal investment of $1,000,000.00 upon DWHTD's non-performance of the IMA causing permanent and irreparable harm to EM1.

56. EM1 Has been damaged in an amount according to proof at trial.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants as follows:

10

COMPLAINT

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For exemplary and punitive damages according to proof and in an amount sufficient to punish and set an example of Defendants;

4.    For treble damages against Defendants;

5.    For interest due according to proof, including but not limited to prejudgment interest;

6.    For attorneys' fees according to proof;

7.    For costs of suit herein incurred; and

8.    For such other and further relief as the court deems just and proper.

Dated: October 23, 2023                                **ROME LLP**


By: /s/ Eugene Rome
         EUGENE ROME
Attorneys for Plaintiff
EM1 Capital LLC

11

COMPLAINT

## DEMAND FOR A JURY TRIAL

Plaintiff hereby requests a trial by jury on all issues triable by a jury.

Dated:  October 23, 2023

ROME LLP

By: /s/ Eugene Rome
          EUGENE ROME
Attorneys for Plaintiff
EM1 Capital LLC

12

# Exhibit A

**INVESTMENT MANAGEMENT AGREEMENT**

**BETWEEN:**

DWHTD Technology PTE LTD referred to as " DWHTD Technology " 77 High Street #09-11 High Street Plaza Singapore 179433

AND,

EM1 Capital LLC Email Address jas@limitlessx.com referred to as "Investor"

---

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, this Investment Management Agreement ("Agreement") is entered effective on

Date: January 7, 2023

**Management Details:**

1. This Agreement concerns the trading of gold against the dollar. **DWHTD Technology cannot be held accountable for any losses obtained due to unprecedented/unpredicted market movements.**

    1.1. "Monthly Return Payment " DWHTD Technology agrees to pay a minimum of 18% every month on total account balance of **$1,000,000.00** For the full duration of this agreement which is 13 months. 100% of the investor's principal will be returned at the end of 13 months.

    1.2. You acknowledge that your funds are being transferred from TD account number # WIRE into a new joint account with DWHTD Technology Account Number  #10085885

    1.3. **Sophisticated Investor.** The Investor has, by reason of its business and financial experience, such knowledge, sophistication, and experience in financial and business matters and in making investment decisions of this type that it is capable of (I) evaluating the merits and risks of an investment and making an informed investment decision; (II) protecting its own interest; and (III) bearing the economic risk of such investment for an indefinite period of time.

    1.4. "Termination" The contract can be terminated by either side under a specific set of circumstances. Investor termination must be initiated for nonperformance. [Returns less than 18%] Investor has the right to terminate the agreement immediately and receive 100% of principal funds back within 30 days from the termination date. In the event of termination, the monthly payment amount and the initial principal balance will be owed back to Investor.

    1.5. "Family & Friends" Legal application to this contract is limited to the "family & friends" nature of the capital injection. This investment is to come with returns equal to a minimum of 18% monthly return for a period of no more than 13 months.

    1.6. "Projected Return" The return on a fully executed contract is 18% flat each month of the total principal amount of Investor's initial account balance. For example, on a $10,000 initial account balance the Investor would receive $1,800.00 every month for 12 months and at the end of the 13th month of the contract, the $10,000 initial account balance will be returned to the Investor. In this example, the $10, 000 is returned or rolled into a new 13-month contract. The Investor

would receive $21,600.00 in total monthly payments per the 13-month agreement.

1.7. Through agreed payment means, investor payout will not be charged transaction fees.

1.8. DWHTD Technology takes no management fee out of the promised return and instead makes capital on the surplus it generates before paying residuals.

1.9. DWHTD Technology agreement is for 13 months as they do not trade during December. The Investor will receive 12 monthly payments on the 1st of every month for 12 of the 13 months per contract stipulation. (January 1st the Investor will not receive any payment). The first payment will be made in February 2023 and the final payment will be made in February 2024.

1.10.  Investor is to provide Savvy Wallet Account details for monthly payments to be made to:

Payee ID #: 63ba4689c16813dea6655c81

Email Address for Savvy Wallet: jas@limitlessx.com

Full Name as reflected on Savvy Wallet account: Jaspreet Mathur

1.11.  Invest shall not withdrawal their initial principal balance until the end of the contract period. Investor is only permitted to withdrawal their 12 monthly payments in accordance with this Agreement.

1.12.   DWHTD Technology shall not access initial principal balance.

1.13.  If Investor wishes to cancel the contract at the end of the contract period, Investor will need to email DWHTD Technology 30 days in advance and 100% of the initial principal balance will be returned on the date of the contract expiration.

At the end of the contract period, Investor will have an option to cancel DWHTD Technology contract and receive back 100% principal amount that they had in their Investor's account on the date of Investor's signing of this Agreement. Or the Investor can elect to allow this Agreement to automatically renew for an additional 13-month period.

DWHTD Technology has the option to cancel the contract at the end of the contract period and elect not to renew the contract with the investor. If DWHTD Technology elects to exercise this option they must email the Investor 30 days in advance and 100% of the Investor's initial principal balance will be returned on the date of the contract expiration.

2. **Expiration.** This Agreement shall automatically expire at the conclusion of a 13-month period in February 2024.

3. **Amendment.** This agreement may not be changed or modified except by mutual agreement in writing signed by both of the parties hereto.

4. **Governing Law.** The terms of this agreement shall be governed by and construed in accordance with the laws of Singapore.

5.  **SEVERABILITY.** The invalidity of any provision of this Agreement shall not affect the validity or enforceability of any other provision set forth herein.

6. **Assignment.** Neither party may assign their rights and responsibilities under this Agreement without prior written consent of the other party. A purchase of all or substantially all of the assets, business, or securities of a party will not be deemed an assignment of the Agreement under this section.

7. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors, personal representatives, legal representatives, heirs and assigns.

8. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall have the force and effect of an original, and all of which shall constitute but one document.

9. **Acknowledgment.** The parties certify the one signing of their behalf has full legal capacity and authority to sign this agreement on their behalf.

10. **No Duress; Opportunity To Consult With Counsel.**   The parties acknowledge that they have entered into this Agreement upon their own free will and have had full opportunity to consult with their legal, tax, accounting, and other advisors prior to entering into this agreement.

The Parties agree and acknowledge the above by their below signatures:

**DWHTD Technology PTE LTD**
**BY:**

Name: Simon Guan Hang Lim

Title: Director

Date: January 5, 2023

Contact Info:
Entity: DWHTD Technology PTE LTD
#09-11 HighStreet High Street Plaza
Singapore, Singapore 179433

EM1 Capital LLC

By:

Name: Jaspreet Mathur

Title: President

Date: Jan 7, 2023

Contact Info:
Entity: EM1 Capital LLC
Address: 9454 Wilshire Blvd., Ste 300 Beverly Hills, CA 90212

# Exhibit B

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)
bIZ

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Business Profile (Company) of DWHTD TECHNOLOGY PTE. LTD. (202246107W)

Date: 11 May 2023

| | | |
|---|---|---|
| Name of Company | : | DWHTD TECHNOLOGY PTE. LTD. |
| Former Name if any | : | |
| Date of Change of Name | : | |
| UEN | : | 202246107W |
| Incorporation Date | : | 28 DEC 2022 |
| Company Type | : | EXEMPT PRIVATE COMPANY LIMITED BY SHARES |
| Status of Company | : | LIVE COMPANY |
| Status Date | : | 28 DEC 2022 |
| Registered Office Address | : | 77 HIGH STREET<br>#09-11<br>HIGH STREET PLAZA<br>SINGAPORE (179433) |
| Date of Address | : | 28 DEC 2022 |
| Date of Last AGM | : | |
| Date of Last AR | : | |
| FYE As At Date of Last AR | : | |

## Business Activities

| | | |
|---|---|---|
| Primary Activity | : | DEVELOPMENT OF SOFTWARE AND APPLICATIONS (EXCEPT GAMES AND CYBERSECURITY)(62011) |
| Primary User-Described Activity | : | |

**Verify Document Instantly**

Check if this document is issued by ACRA.



**ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)**    bIz

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Business Profile (Company) of DWHTD TECHNOLOGY PTE. LTD. (202246107W)

Date: 11 May 2023

| Secondary Activity | : |
| Secondary User-Described Activity | : |

### Issued Share Capital

| Amount | Number of Shares [1] | Currency | Share Type |
|---|---|---|---|
| 1 | 1 | UNITED STATES OF AMERICA, DOLLARS | ORDINARY |

[1] Number of Shares includes number of Treasury Shares

### Paid-Up Capital

| Amount | Number of Shares | Currency | Share Type |
|---|---|---|---|
| 1 | 1 | UNITED STATES OF AMERICA, DOLLARS | ORDINARY |

### Company has the following Ordinary Shares held as Treasury Shares

| Number of Shares | Currency |
|---|---|

### Audit Firm(s)

**Name**

**Verify Document Instantly**

Check if this document is issued by ACRA.



**ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)**    bIz

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Business Profile (Company) of DWHTD TECHNOLOGY PTE. LTD. (202246107W)

Date: 11 May 2023

## Charge(s)

| Charge Number | Date Registered | Currency | Amount Secured | Chargee(s) |
|---|---|---|---|---|

## Officer(s)

| Name<br><br>Address | Identification Number | Nationality/ Citizenship | Position | Date of Appointment | Source of Address |
|---|---|---|---|---|---|
| LIM HANG GUAN SIMON<br><br>3 FERNVALE CLOSE<br>#15-08<br>LUSH ACRES<br>SINGAPORE (797486) | S6944516J | SINGAPORE CITIZEN | DIRECTOR | 28 DEC 2022 | OSCARS |
| HAN LYNN KYAW<br><br>364 CLEMENTI AVENUE 2<br>#02-475<br>SINGAPORE (120364) | S8373882J | SINGAPORE CITIZEN | SECRETARY | 28 DEC 2022 | ACRA |

**Verify Document Instantly**

Check if this document is issued by ACRA.



ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)

biz

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Business Profile (Company) of DWHTD TECHNOLOGY PTE. LTD. (202246107W)

Date: 11 May 2023

### Shareholder(s)

| Name | Identification Number | Nationality [2]/ Place of origin [3] | Number of Shares | Currency | Address Changed |
|------|------------------------|--------------------------------------|------------------|----------|-----------------|
| **Address** | | | | | **Source of Address** |
| LIM HANG GUAN SIMON | S6944516J | SINGAPORE CITIZEN | 1 (ORDINARY) | UNITED STATES OF AMERICA, DOLLARS | 23 OCT 2021 |
| 3 FERNVALE CLOSE #15-08 LUSH ACRES SINGAPORE (797486) | | | | | OSCARS |

[2] Includes nationality and citizenship
[3] Includes place of incorporation, place of origin and place of registration

## Abbreviation

| | | |
|---|---|---|
| UL | : | Local Entity not registered with ACRA |
| UF | : | Foreign Entity not registered with ACRA |
| AR | : | Annual Return |
| AGM | : | Annual General Meeting |
| FS | : | Financial Statements |
| FYE | : | Financial Year End |
| OSCARS | : | One Stop Change of Address Reporting Service by Immigration & Checkpoint Authority. |

**Verify Document Instantly**
Check if this document is issued by ACRA.



ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)

**bIz**

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Business Profile (Company) of DWHTD TECHNOLOGY PTE. LTD. (202246107W)

Date: 11 May 2023

## Notes

- All the information provided above are extracted from lodgements filed with ACRA and/or from other government sources.

- Please check to ensure that this document is issued by ACRA by:
  (a) scanning the verification QR code at the bottom of the page, or
  (b) visiting the verification URL at the bottom of the page, or
  (c) uploading the verifiable OpenAttestation file (e.g. Business_Profile.oa) on www.acratrustbar.gov.sg.




TAN YONG TAT

ASST REGISTRAR OF COMPANIES & BUSINESS NAMES
ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)
SINGAPORE

RECEIPT NO.  :  ACRA230511193169

DATE  :  11 MAY 2023

**Verify Document Instantly**

Check if this document is issued by ACRA.

